# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                            )
ZAFAR H. KHAN,                              )
                                            )
                        Plaintiff,          )        Civil Action No. 05-1831 (TFH)
                                            )        ECF
            v.                              )
                                            )
MICHAEL B. MUKASEY,                         )
ATTORNEY  GENERAL,                          )
                                            )
                        Defendant.          )
_____     )

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Michael Mukasey, Attorney General, United States Department of Justice

("DOJ,"  "Defendant," or "Agency"), through and by undersigned counsel, respectfully moves

for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Plaintiff

Zafar H. Khan brings a complaint under Title VII of the Civil Rights Act of 1964, as amended,

codified at 42 U.S.C.A. Section 2000e, et seq., the Civil Rights Act of 1991, as amended,

codified at 42 U.S.C.A. Section 1981, et seq., the Civil Rights Attorney's Award Act, as

amended, codified at 42 U.S.C.A. Section 1988, et seq., and Title 29, Code of Federal

Regulations, Part 1614, et seq., alleging discrimination based upon race, color, religion, national

origin, and retaliation.  However, the record clearly proves that not only has Plaintiff failed to

timely exhaust his administrative remedies as to many of his claims, but that even if he had

timely exhausted his administrative remedies, summary judgment for Defendant should be

granted because Plaintiff cannot establish discrimination or retaliation.  Accordingly, Plaintiff's

claims must fail.

A Statement of Material Facts Not Genuinely in Dispute, a Memorandum of Points and Authorities in support of this Motion, and a proposed Order are filed herewith. For the reasons provided in the attached Memorandum of Points and Authorities, there are no material facts in dispute and the facts in this case establish that summary judgment should be granted in the Agency's favor as a matter of law.

Dated: June 30, 2008

                              Respectfully submitted,


                              _/s/_____
                              JEFFREY A. TAYLOR, D.C. Bar #498610
                              United States Attorney

                              _/s/_____
                              RUDOLPH CONTRERAS, D.C. BAR #434122
                              Assistant United States Attorney


                              _/s/_____
                              MEGAN M. WEIS
                              Special Assistant U.S. Attorney
                              United States Attorney's Office
                              Civil Division
                              555 4th Street, NW
                              Washington, D.C. 20530


                              *Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------
                                          )
ZAFAR H. KHAN,                            )
                                          )
                          Plaintiff,      )        Civil Action No. 05-1831 (TFH)
                                          )        ECF
              v.                          )
                                          )
MICHAEL B. MUKASEY,                       )
ATTORNEY  GENERAL,                        )
                                          )
                          Defendant.      )
                                          )
---------------------------------------------------------

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHOIRYT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff brought the above-captioned action under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000(e), et seq., the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq., the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq., and Title 29, Code of Federal Regulations, Part 1614, et seq. alleging discrimination based upon race, color, religion, national origin and retaliation for previously engaging in the equal employment opportunity ("EEO") process.  Plaintiff's claims are not only barred as a matter of law, but also fail on the merits. First, Plaintiff failed to timely exhaust his administrative remedies as to many of his claims. Second, even if Plaintiff had timely exhausted his administrative remedies, summary judgment for Defendant should be granted because Plaintiff cannot establish discrimination or retaliation. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for summary

judgment because there is no genuine issue of material fact and the Agency is entitled to summary judgment as a matter of law.

## **FACTUAL BACKGROUND**

Defendant adopts, by reference, its Statement of Material Facts not in Genuine Dispute, attached hereto.

Plaintiff, Zafar A. Khan, was employed by ATF as an ATF Telecommunications Specialist, PD-391-2 in the Radio Communications Branch[1] of the Technical Services Division, Office of Science and Technology from May, 1998 until his resignation in April, 2004.  See Ex. 1.  Plaintiff filed Agency Complaint No. E-03-0001 against the ATF on September 17, 2003, alleging unlawful discrimination based on race (Asian), color (brown), religion (Islam), national origin (India/Pakistan) and unlawful retaliation for prior EEO activity.  See Compl. ¶ 6; Ex. 2. Plaintiff also filed Agency Complaint No. E-04-0044 against ATF on June 26, 2004 alleging unlawful discrimination based on race, religion, national origin, and retaliation for prior EEO activities.  See Compl. ¶ 8; Ex. 3.  The two EEO Complaints were subsequently merged on April 28, 2005.  Ex. 6.  A final agency decision was then issued on August 16, 2005 denying all claims raised by Plaintiff in both EEO Complaints. Ex. 7.

While first employed as a Telecommunications Specialist, Plaintiff provided service to the Houston Field Division.  Ex. 8 at 37.  During that time, oral complaints were received about Plaintiff's service to the Houston Division.  Ex. 14 at 100.  In October 2001, Telecommunications Manager Sam Ford became Plaintiff's immediate supervisor.  See Ex. 8 at

---

[1]The Radio Communications Branch is now known as the Wireless Communications Section.

27; Exhibit 20, Affidavit of Samuel L. Ford, ("Ex. 20") at 2. In 2001, Plaintiff was then assigned

to provide technical radio support to the Baltimore Field Division. Ex. 13 at 2. Complaints were

again received about Plaintiff's technical service to the division. See Ex. 12 at 161:16; Ex. 14 at

101:14-102:18. The Complaints stated that Plaintiff was unable to meet the operational needs of

the agents he worked with at the Baltimore Field Division. See Ex. 12 at 161:16, 255:5; Ex. 14

at 101:14-102:18.

In March 2003, Mr. Ford informed Plaintiff he was giving Plaintiff an unsatisfactory

mid-year performance evaluation, as he had observed that Plaintiff was unable to perform the

basic functions of his job. Ex. 20 at 6. Plaintiff was rated at an unsatisfactory level in four of the

five critical elements of his position. Id. Mr. Ford observed that Plaintiff could not operate

independently and required the assistance of other technicians to accomplish his tasks. See Ex.

12 at 67:18-20, 68-72. Mr. Ford further noted that Plaintiff did not possess the technical skills

necessary to satisfactorily meet the requirements of his assigned duties. Ex. 20 at 5.

On June 18, 2003, Plaintiff was issued a "Notice of Proposal to Suspend for Seven (7)

Calendar Days" for providing false statements to a law enforcement officer and failure to report

an incident involving his assigned GOV by Timothy McGinnis, Chief, Technical Service

Division. See Ex. 15 at 16. An ATF's Office of Inspection investigation found that on June 26,

2002, Plaintiff was ticketed for driving alone in the GOV in a High Occupancy Vehicle ("HOV")

lane. During a January 24, 2003 interview, under oath, with ATF investigators, Plaintiff stated

that at the time of the traffic violation, he was en route to his residence. Ex. 15 at 17. Police

Officer Smith, who issued the ticket, was later interviewed by ATF investigators and stated that

Plaintiff told him that Plaintiff was on official business for ATF at the time of the incident and that he was en route to Dulles Airport.  Ex. 15 at 18.

Mr. McGinnis concluded that Plaintiff violated ATF Order 2130.1, Conduct and Accountability, section 17(a), by "lying to a law enforcement officer in the course of an official inquiry." Ex. 15 at 19. Plaintiff further violated the ATF Order by failing to report the traffic violation to his supervisor.  Id.  The investigation resulted in Plaintiff's suspension from work without pay from September 15-22, 2003 for "providing false statements to a law enforcement officer and failure to report an incident involv[ing] a government furnished vehicle." Id.  The decision was based on the Office of Inspection's Report of Investigation, the notice of proposed suspension, Plaintiff's written reply dated July 17, 2003 and his oral reply on July 18, 2003.  See Ex. 15 at 1.  The deciding official, Mr. McGinnis, found that as a Telecommunications Specialist, is was critical that Plaintiff be in strict compliance with all laws and regulations in his professional and personal life.  Ex. 15 at 2. Mr. McGInnis found that as an ATF employee with access to a GOV, Plaintiff should have known that ATF policy requires an employee who operates a GOV to immediately report all incidents, tickets, and citations involving their assigned vehicle to a person in their supervisory chain of command, whether on or off duty.  Id. Because Plaintiff violated a State traffic law and as a result received a citation which he failed to report, the deciding official found that the sustained charges warranted disciplinary action.  Ex. 15 at 1.

With respect to his job performance, Plaintiff continued to not meet the minimum requirements for his position, and on June, 20, 2003, Plaintiff was placed on a Performance Improvement Plan ("PIP").  See Ex. 13.  The PIP informed Plaintiff that he was not meeting the

minimum requirements of his position and that he was given 90 days to raise his performance in the four critical elements he was currently rated at performing "below expectations." See Ex. 13. The PIP detailed why Plaintiff's performance was considered deficient in each of the four areas and specific expectations for each area. Ex. 13 at 5. Moreover, the PIP outlined specific tasks and assignments that Plaintiff was to complete during the PIP period. Ex. 13 at 5.

To allow Plaintiff the opportunity to successfully to complete his PIP, Plaintiff was relieved of his duties assisting the Baltimore Field Division. See Ex. 20. Therefore, Plaintiff's home-to-work privileges using the GOV were temporarily suspended because he was no longer providing field support from his home to the Baltimore Field Division. See Ex. 8 at 108-109; Ex. 20 at 8. Because Plaintiff failed to successfully complete his PIP, the Baltimore duties were never restored. See Ex. 20.

During the original 90 days Plaintiff was given to raise his performance under the PIP, Plaintiff took 12 workdays of sick leave and was suspended from work for five workdays. See Ex. 8 at 29-31; Ex. 16; Ex. 18; Ex. 20 at 9. Therefore, because Plaintiff had not yet completed the assignments in the PIP, the PIP was extended an additional 20 days to afford Plaintiff more time to complete the outlined tasks. See Ex. 8 at 29-31; Ex. 16; Ex. 18; Ex. 20 at 9.

By a memorandum dated October 6, 2003, Mr. Ford informed Plaintiff that he was still unable to demonstrate certain proficiencies required by Plaintiff's job. Ex. 13 at 2. On December 10, 2003, Plaintiff was issued a "Proposed Removal Based on Unsatisfactory Performance". See Ex. 18 at 86. This proposal detailed examples of shortcomings and mistakes made by Plaintiff while performing his job from June 20, 2003 to December 10, 2003. See Ex.

18. As a result of the proposed removal, Plaintiff was placed on restricted duty status and was asked to surrender his assigned GOV, his credentials, and work equipment. See Ex. 18.

Plaintiff made oral replies to the proposed removal to Mr. McGinnis on January 15 and January 20, 2004. Ex. 19 at 64. On April 7, 2004, Plaintiff was given a "Decision to Remove for Unsatisfactory Performance," effective April 10, 2004. See Ex. 19. The decision was based on all of the material which formed the basis for the proposal, as well as the issues presented during Plaintiff's oral replies and exhibits presented by Plaintiff. See Ex. 19. Before the effective date of the removal, on April 9, 2004, Plaintiff submitted his letter of resignation to ATF. Ex. 8 at 132.

Plaintiff now brings a complaint under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section 2000(e), et seq.; the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.; and Title 29, Code of Federal Regulations, Part 1614, et seq., alleging discrimination based upon race, color, religion, national origin and retaliation against ATF.

Specifically, Plaintiff alleges (1) the failure to treat him fairly and lawfully within the workplace and failure to accurately and fairly evaluate his job performance accomplishments, specifically the failure of ATF to timely promote him; (2) the Agency's administration of false and overly severe disciplinary actions, specifically Plaintiff's suspension from employment, and his being forced to surrender his assigned GOV, his credentials, his cellular phone, and work equipment and tools after he was issued his notice of proposed removal; (3) the deprivation of routine and ordinary workplace courtesies and tools required for the successful completion of his

duties, specifically the delay and denial of training opportunities and the denial of technical certifications; (4) that he was falsely and pretextually placed on a PIP;  (5) the relief from certain professional responsibilities during the PIP and suspension of the use of his assigned GOV was discriminatory; (6)  the extension of the PIP was discriminatory; (7) the issuance of the decision to remove Plaintiff from Government employment constitutes an unlawful termination; and (8) that during his employment with ATF, there existed a hostile and discriminatory work environment evidenced by co-workers making derogatory and adverse comments toward him and the fact that only minor disciplinary actions were taken against others in the workplace.

## ARGUMENT

### I.    Legal Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Summary judgment is appropriate where, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A genuine issue of fact is one which could change the outcome of the litigation.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.   Alexis v. District of

Columbia, 44 F. Supp. 331, 337 (D.D.C. 1999); Celotex, 477 U.S. at 323. When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact for trial.  Alexis, 44 F. Supp. at 337.

The opposing party must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail."  Id.  Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C.1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997).  The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322; see also Alexis, 44 F. Supp. at 337.


II.    **Failure to Exhaust Administrative Remedies**

Plaintiff has included a number of specific claims that should be dismissed because he did not properly exhaust those claims during the administrative process.  In 42 U.S.C. § 2000e-16, Congress granted the Equal Employment Opportunity Commission ("EEOC")  broad authority to enforce within the federal government the Civil Rights Act's anti-discrimination provisions.  See, e.g., Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  This broad power includes the authority to promulgate regulations controlling the manner in which federal agencies process discrimination complaints.  Id.  Under this authority granted by that statute, the EEOC has issued "detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing

formal charges, and appealing agency decisions to the [EEOC]." Id.  Complainants are required to timely exhaust administrative remedies before filing suit in court.  Id; Marshall v. James, 2003 WL 21757925 (D.D.C. July 31, 2003).  Moreover, under National Railroad, *each* incident of discrimination and *each* retaliatory adverse employment decision "constitutes a separate actionable 'unlawful employment practice,'" for which a timely administrative complaint must be filed.  National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 113 (2002).

"Complainants *must* timely exhaust these administrative remedies before bringing their claims to court." Bowden, 106 F.3d 433, 437; Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court"); Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action").  As the U.S. Supreme Court has stated, "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." National Railroad, 536 U.S. at 108, quoting  Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980).  Summary judgment or dismissal is appropriate in cases where the plaintiff has failed to exhaust administrative remedies.  Jensen v. Frank,  912 F.2d 517 (1st Cir. 1990); Saltz v. Lehman, 672 F.2d 207 (D.C. Cir. 1982); EEOC v. Boorstin, 751 F.2d 1405 (D.C. Cir. 1985); DeMedina v. Reinhardt, 444 F. Supp. 573 (D.D.C. 1978).

Plaintiff's allegations regarding the following matters were not timely raised with an EEO counselor: the failure to treat Plaintiff fairly and lawfully within the workplace and failure to accurately and fairly evaluate his job performance accomplishments, specifically the failure of ATF to timely promote him; the delay and denial of training opportunities and the denial of

technical certifications; and an alleged hostile and discriminatory work environment.  None of the above claims were raised, accepted, or investigated during the administrative process and therefore Plaintiff did not exhaust his administrative remedies and the Court should dismiss these claims. <u>See</u> Ex. 4; Ex. 5.  Further, Plaintiff's allegations that he was subjected to a hostile working environment are not like or reasonably related to the claims litigated in the administrative process, and thus should properly be dismissed for failure to exhaust administrative remedies. <u>See, e.g.</u>  <u>Park v. Howard University</u>, 71 F.3d 904, 907 (D.C. Cir. 1995).

Further, during the administrative process, Plaintiff's claims of discrimination based on race, color, religion, and national origin were limited to his suspension from employment and being placed on a PIP. Exhibit 21, Report of Investigation Case Number E-03-0001, ("Ex. 21") at 2.  The allegations relating to his being relieved of his duties assisting the Baltimore Field Division, extension of the PIP, and suspension of his use of the GOV, were solely identified as claims of retaliation. <u>Id</u>.  In his Complaint, Plaintiff alleges both discrimination and retaliation with regard to all issues. <u>See generally</u> Compl.  Plaintiff's claims based upon theories that did not appear in the administrative complaint are properly dismissed for failure to exhaust.  <u>See</u> <u>Miller v. Smith</u>, 584 F. Supp. 149, 154 (D.D.C. 1984) (dismissing, on exhaustion grounds, claim of race discrimination where administrative complaint alleged only discrimination based on sex).

III.    **The Majority of Plaintiff's Claims Do Not Rise to the Level of a Materially Adverse Employment Action**

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin. Brady v. Office of the Sergeant at Arms, U.S. House of Reps., 520 F.3d 490, 493.  To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) that there is a causal link between the protected activity and the adverse action. Holcomb v. Powell, 433 F.3d 889, 901-02, (D.C. Cir. 2006) (citing Forkkio v. Powell, 306 F.3d 1127, 1131; Brown v. Brody, 199 F.3d at 452.  Thus, a common element of all of the Plaintiff's claims in this case is that Plaintiff suffered an adverse personnel action.  Russell v. Principi, 257 F.3d 815 (D.C. Cir. 2001); Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 843 (D.C. Cir. 2001).

The D.C. Circuit has held that "an employer can effectively retaliate against an employee by taking actions not directly related to his employment."  Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 63 (U.S. 2006); See, e.g., Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (the Court held that the Federal Bureau of Investigation retaliated against employee by refusing to investigate death threats a federal prisoner made against the agent  and his wife); Berry v. Stevinson Chevrolet, 74 F.3d 980, 984, 986 (CA10 1996) (finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination).  Thus, the Court held that the definition of an adverse action, is "not limited to discriminatory actions that affect the terms and conditions of employment.  Wachovia Bank,

N.A. v. Schmidt, 546 U.S. 303, 319 (2006) (rejecting the statutory construction that would "[t]rea[t] venue and subject-matter jurisdiction prescriptions as *in pari materia*" because doing so would "overloo[k] the discrete offices of those concepts").

However, the Court in Burlington, states that "any given act of retaliation will often depend upon the particular circumstances. Context matters." Burlington, 548 U.S. at 69. Quoting Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81-82 (U.S. 1998), the Court notes that "the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."   Even with this less stringent view of "adverse action," Plaintiff's Plaintiff cannot make the requisite showing with respect his claims relating to delay and denial of training opportunities and the denial of technical certifications; the relief from certain professional responsibilities during the PIP; placement on the PIP; and extension of the PIP.

> A.    Plaintiff's Claims of Lack of Training and Developmental
>         Opportunities Fail to Rise to the Level of an Adverse Action

As stated prior, Plaintiff failed to exhaust his administrative remedies relating to his claim of delay and denial of training opportunities and the denial of technical certifications, and thus his claims may properly be dismissed for failure to exhaust administrative remedies. See, e.g. Park, 71 F.3d  at 907.  Moreover, this claim does not rise to the level of an adverse action required to establish a prima facie case of discrimination or retaliation. Other Courts have held that "the denial of educational and training opportunity claims, even if it occurred, is not an adverse employment action."  Spencer v. AT&T Network Sys., No. 94-C-7788, 1998 WL 397843 *5 (N.D. Ill. July 13, 1998).

Further, Plaintiff's claim fails because he fails to demonstrate how this alleged denial of training has caused him any harm. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 548 U.S. at 67. "A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rochon, 438 F.3d at 1219 (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662 (7th Cir. Ill. 2005).

Moreover, Plaintiff's claim also fails because, contrary to his characterization, he has been extensively trained by ATF.  Plaintiff has received training about mobile radios, System-Saver Portable radios, in principles of communications, Quantar base station training, and frequency management training.  See Ex. 8 at 81:9-20.  Plaintiff has also completed the following training courses:

> Motorola Astro Digital System, 8-10-98
> ATF Instructor Course, 2-23-99
> Motorola Astro Mobile/Portable-4-26-99
> Communications Concepts, 6-14-99
> Ostronic's CAT-5 Installer Training, 8-31-99
> NTIA Frequency Management,9-20-99
> Motorola Quantar Repeater, 6-4-02
> Project management, 3-13-02
> RCB In-House Training for New Hires (which covers all radio
>    equipments, test equipments, policies and procedures
>    applicable to ATF radio systems (1st time 1999 and 2nd
>    time 2001).

 See Ex. 18 at 88.

Because Plaintiff's allegation of denial of training does not constitute a adverse employment action and is untrue in any event, summary judgment should be entered against Plaintiff as to this claim.

B.      Plaintiff's Claims about His Change of Duties Fail to Rise to the Level of an

Adverse Action

Plaintiff's allegation that he was relieved of his responsibilities of providing support to

the Baltimore Field Division and therefore also suspended from use of his assigned GOV due to

discrimination and retaliation does not rise to the level of a tangible change in working

conditions constituting a material employment disadvantage.  Further, as stated above, these

claims were not exhausted at the administrative level for Plaintiff's allegation of discrimination

and therefore should be dismissed relating to his allegation of discrimination. See, e.g.  Park, 71

F. 3d at 907.

In this instance, merely some of Plaintiff's duties were changed so that he could

concentrate on completing the items outlined in his PIP.  Changes in assignments and work-

related duties, such as those made in the instant case, do not constitute adverse employment

decisions if unaccompanied by a decrease in salary or work hour changes.  See Mungin v.Katten

Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997).  Further, Plaintiff cannot show any

injury flowing from the fact that he was no longer providing support to the Baltimore Field

Division.  Burlington, 548 U.S. at 67.

Plaintiff's claims regarding his changes in assignments are simply not the type of adverse

personnel actions that sustain a discrimination or retaliation claim under Title VII.  Accordingly,

summary judgment should be entered against Plaintiff as to these claims.

C.  Plaintiff's Claims of being Placed on a PIP and Extension of the PIP Fail to Rise to the Level of an Adverse Action

As stated above, Plaintiff's claims of being placed on the PIP and the subsequent extension of the PIP were not fully exhausted at the administrative level.  At the administrative level, Plaintiff's allegation of being placed on the PIP was limited to his claim of discrimination and his allegation of extension of the PIP was solely identified as a claim of retaliation.  Ex. 21 at 2.  Plaintiff now alleges both discrimination and retaliation with regard to both  issues. See generally Compl.  Plaintiff's claims based upon theories that did not appear in the administrative complaint are properly dismissed for failure to exhaust.  See Miller, 584 F. Supp at 154

Plaintiff's claims are further subject to dismissal because being placed on a PIP does not constitute an adverse employment decision.  Taylor v. Small, 350 F.3d 1286, 1292-93 (D.C. Cir. 2003).  The placement of Plaintiff on the PIP, and the extension thereof, did not result in any change in Plaintiff's pay or grade, or involve a significant change in benefits or responsibilities. Therefore, that summary judgment should be entered against Plaintiff.

IV.    The **McDonnell Douglas** Framework for Disparate Treatment Cases

This Court has recently described the burden-shifting framework in analyzing Title VII discrimination and retaliation cases:

> In racial discrimination and retaliation suits under Title VII, "the plaintiff may prove his claim with either direct evidence or by indirectly proving a prima facie case under the burden-shifting framework established in *McDonnell Douglas [Corp. v. Green,* 411 U.S. 792, 802 (1973) ]." *Kalekiristos v. CTF Hotel Mgmt. Corp.,* 958 F. Supp. 641, 665 (D.D.C. 1997).  Under this framework, a plaintiff-employee carries the initial burden of production and must establish a prima facie case of discrimination. *Id.*  If a plaintiff-employee does so, the burden shifts to the

defendant-employer, who "must then articulate a legitimate, nondiscriminatory reason for its actions." *Stella v. Mineta,* 284 F.3d 135, 144 (D.C. Cir.2002) (citing *McDonnell Douglas,* 411 U.S. at 802). If the defendant-employer successfully provides a valid reason, the burden shifts back to the plaintiff-employee, who "must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory." *Id.* (citing *McDonnell Douglas,* 411 U.S. at 804).

However, under the D.C. Circuit Court's recent decision in *Brady v. Office of Sergeant at Arms,* [520 F.3d 490] (D.C. Cir. Mar. 28, 2008), in a disparate treatment case, once the defendant has articulated a legitimate non-discriminatory reason for its actions, the Court "need not- *and should not*" decide whether a plaintiff who suffered an adverse employment action established a prima facie case. *Id.* at *3 (emphasis in original). Instead, the Court must focus on one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason. . .?" *Id.*

Laurent v. Bureau of Rehab., Inc., --- F. Supp. 2d ---, 2008 WL 1710912, at *3 (D.D.C. April 14, 2008) (Leon, J.) (granting summary judgment on plaintiff's claims including disparate treatment and hostile work environment claims).

Furthermore, as the D.C. Circuit noted in Brady, although "a plaintiff need not demonstrate that he or she was treated differently from a similarly situated employee or that the position was filled by a person outside the plaintiff's group[,] . . . such evidence (or the lack of such evidence) may be relevant to the determination at summary judgment or trial whether intentional discrimination occurred." Brady, 520 F.3d at 490, n.2. Indeed, "[w]hile a Title VII plaintiff can resort to multiple methods of showing that the employer's stated reason for the employment action was a pretext, the most common method . . . is evidence suggesting that the employer treated other employees of a different race, gender, or national origin more favorably in the same factual circumstances. To prove that she is similarly situated to another employee, a

18

plaintiff must demonstrate that all of the relevant aspects of her employment situation were nearly identical to those of the allegedly comparable employee.'" <u>Laurent</u>, 2008 WL 1710912, at *3 (internal citations and quotations omitted).

Plaintiff presents no direct evidence of discrimination, and therefore, he relies on an inference of discriminatory motive based on the circumstances as alleged in his complaint. This Court recently instructed that in a Title VII suit, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not- *and should not*-decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." <u>Pardo-Kronemann v. Jackson</u>, **--**F.Supp.2d **--,** 2008 WL 836153 (D.D.C.2008) (emphasis in original) (quoting <u>Brady</u>, 520 F.3d at 490).

**V.    Plaintiff Can Offer No Evidence to Rebut Management's Articulated Reasons for Its Actions**

A.    <u>Defendant Did Not Discriminate or Retaliate Against Plaintiff by Placing Him on a PIP</u>

In addition to Defendant's prior arguments that Plaintiff's claim that Mr. Ford subjected him to discrimination and retaliation by placing him on a PIP should be dismissed for failure to exhaust administrative remedies for Plaintiff's claim of retaliation, and that placement on a PIP does not constitute an adverse employment action, this claim should fail because Defendant has established legitimate, nondiscriminatory reasons for placing Plaintiff on a PIP.

Plaintiff's own perception of his work performance is not relevant; it is only the perception of the decision maker that matters. <u>Waterhouse v. Dist. of Columbia</u>, 124 F. Supp. 2d 1, 7 (D..D.C. 2000), <u>aff'd</u>, 298 F.3d 989 (D.C. Cir. 2002). Defendant had legitimate,

nondiscriminatory reasons for placing Plaintiff on a PIP. Mr. Ford stated that Plaintiff was placed on a PIP because he was performing below expectations in four of the critical elements of his position at his March 2003 mid-year review.[1] Ex. 20 at 6.

The record demonstrates that Plaintiff was not meeting his supervisor's expectations at the time he was placed on the PIP and Ford provided detailed documentation of the problems Plaintiff was experiencing in the memorandum entitled "Opportunity Period to Improve Performance". Exhibit 13 at 2. Mr. Ford stated that Plaintiff required "close supervision and repetitive technical assistance for tasks performed on each of [plaintiff's] projects." Id. From October 2002 to January 2003, Plaintiff's performance deteriorated and he failed to complete several assignments Mr. Ford gave him. Id. When Plaintiff was required to complete tasks that required the use of test equipment, troubleshooting techniques and technical skills, he often failed to complete his assignments or required assistance from other technicians. Ex. 13 at 3. Plaintiff failed to complete the more technical and challenging projects assigned to him. Id.

Mr. Ford also provided a detailed narrative in the PIP of Plaintiff's performance under each of the critical elements on which Plaintiff was rated. Ex. 13 at 3-10. Mr. Ford concluded that Plaintiff was "Below Expectations" on four Critical Elements: Technical Expertise, Leadership, Conduct and Cooperation, and Oral and Written Communications. Ex. 13 at 3. The Performance Standards for each Critical Element are attached as Exhibit 22 and are incorporated by reference.

---

[1] In the Performance Evaluations for Telecommunications Specialists (Radio), there were three rating levels that an employee could receive for each Critical Element: Exceeds Expectations, Achieves Expectations, and Below Expectations. For the Overall Rating, the employee could receive a rating of Outstanding, Exceeds Objectives, Meets Objectives, or Unsatisfactory. Plaintiff received an Overall Rating of Unsatisfactory in his Performance Evaluation from 10/1/02-9/30/03. See Exhibit 22, Performance Evaluations for Telecommunications Specialists (Radio), ("Ex. 22").

For each Critical Element, Mr. Ford cited multiple examples of why Plaintiff was falling below expectations and provided specific recommendations for improvement. Ex. 13 at 3-10. Specifically, for the Critical Element of Technical Expertise, Mr. Ford cited examples where Plaintiff demonstrated a lack of technical expertise and failed to complete a technical evaluation of a mobile radio provided by the Justice Department for testing. Id. The Plaintiff used improper technical procedures and even though the final reports were due in January, 2003, as of the date of the PIP, June 20, 2003, Plaintiff had not provided the requested report. Ex. 13 at 4. Mr. Ford also cited an example where Plaintiff was installing a base station in a new location and he required additional technical assistance for configuring the equipment. Id. He failed to use proper troubleshooting techniques and was unable to complete the assignment independently even though he had step by step written instructions. Id. In another incident where Plaintiff was preparing to add an additional repeater site in Salisbury, MD for the Baltimore Field Division, he required constant supervision and reminders to follow-up on the process and for making proper technical decisions for that installation. Ex. 13 at 5. During the installation of the repeater, Plaintiff did not display the technical skills required to successfully complete the assignment. Id.

At the time he placed Plaintiff on the PIP, Mr. Ford found that Plaintiff could not operate independently and required the assistance of other technicians. Ex. 12 at 67:19-20, 66:20, 68:1-7. For example, Plaintiff was assigned to repair a base station at the Hyattsville Field office and he was unable to do so independently. Ex. 12 at 68-74. Given Plaintiff's grade and years of experience, he should have been able to complete this assignment without assistance. Id.

As for the Critical Element of Leadership, Mr. Ford determined that Plaintiff failed to demonstrate a general knowledge of current communications technologies by not evaluating new

communications products and equipment and not determining how they can or cannot be used to support the Agency's needs.  Ex. 13 at 6.  Plaintiff did not evaluate the EFJ mobile radio, battery chargers, battery analyzers and surveillance kits as instructed.  Id.  Additionally, Plaintiff was assigned to manage the OTAR ID's and be solely responsible for interfacing with Customs regarding ID assignments and encryption codes.  Ex. 13 at 7.  Plaintiff failed to generate OTAR codes and then to properly file and store the codes.  Id. He did not effectively communicate with Customs.  Plaintiff still did not complete the assignment after Ford and the Radio Branch Chief reviewed the procedure with him and had his concurrence that he understood the instructions.  Ford had to complete the assignment himself.  Id.

Mr. Ford also gave examples to illustrate Plaintiff's performance of "Below Expectations" performance in the Critical Element of Conduct and Cooperation. Ex. 13 at 7-9. By not completing assigned tasks and not keeping Ford informed of his progress of any problems encountered while attempting to complete assigned tasks, Plaintiff was displaying an uncooperative attitude towards his responsibilities and co-workers.  Ex. 13 at 8. Moreover, by accepting products for evaluation and then failing to complete the evaluation and provide feedback, Plaintiff was sending a negative message to professional contacts.  Id.  Another example was that while representing ATF-Radio Branch on the evaluation of a mobile radio, Plaintiff did not produce test results and did not share any findings with other bureaus involved in testing and evaluation.  Rather than developing his own test procedures, Plaintiff asked other bureaus to send him their test plans for his evaluations.  Id. Although Mr. Ford provided Plaintiff with an outline of the parameters that were critical to measure, Plaintiff still did not perform the tests.  Id.

The final Critical Element detailed in the PIP in which Plaintiff was performing "Below Expectations" was Oral and Written Communications. Ex. 13 at 9. After completing assignments performed while on travel, Plaintiff consistently failed to prepare a written report about his activities as he was required to do. Id. Plaintiff also repeatedly failed to provide the required written reports concerning services he provided for an office move or new repeater or base station site. Id. Moreover, the reports that Plaintiff actually provided upon Mr. Ford's request, did not include specific technical information and/or pictures of the sites in question, all of which were required. Id. When Plaintiff was asked to provide briefings on his projects, he was unsuccessful in explaining the status of the project and was unable to define the project in technical terms. Id. Specifically, Plaintiff was unable to clearly describe how the repeater in Salisbury was going to be accessed by the user and was unable to use technical terms and references when briefing Ford on the wire-line configuration for the back-to-back repeater. Id.

The opinions of Plaintiff's co-workers further support Mr. Ford's observations of Plaintiff's performance. Exhibit 23, Affidavit of Steven Scott Taylor, ("Ex. 23"). Tactical Operations Officer Steven Taylor, who was the primary contact with Plaintiff for the Baltimore Field Division, stated that Plaintiff had trouble communicating, was unfamiliar with radio communications, and described his performance as "below average." Ex. 23 at 6. Mr. Taylor received several complaints from agents who had requested Plaintiff's assistance for radio repair issues and who did not receive the requested assistance in a timely manner. Id. Mr. Taylor also complained to Mr. Ford about Plaintiff's performance. Ex. 12 at p.161:16; ex. 14 at 101:14-102:18. Specialist Jeffrey Hueston found that despite Plaintiff's experience, he struggled with some of the basic tasks of a Telecommunications Specialist. Ex. 17 at 12. Thus, Mr. Ford was

not alone in his observations of Plaintiff. Defendant's legitimate, nondiscriminatory reasons for placing Plaintiff on a PIP overwhelmingly rebut Plaintiff's claims of discrimination and retaliation.

B. Defendant Did Not Discriminate or Retaliate Against Plaintiff by Suspending Plaintiff for GOV Incident

Plaintiff alleges he was discriminated against when he was suspended for five work days in September, 2003 after receiving a traffic citation while driving his assigned GOV. Compl. ¶ 24.  Plaintiff alleges his discipline was far more adverse than other ATF employees who have committed similar vehicle violations while operating ATF vehicles. Id.  Plaintiff fails to provide any evidence regarding other ATF employees who received different discipline for the same offense.  Mr. McGinnis suspended Plaintiff after a review of all the relevant information, and determined that the suspension was appropriate because Plaintiff provided false information to a law enforcement officer and failed to immediately report the incident to a supervisor.  Ex. 15 at 2.

In determining whether pretext exists, the issue is not whether Mr. McGinnis made the correct decision in suspending Plaintiff (and Defendant in no way suggests that the suspension was not correct), but whether he honestly believed in the reasons he offered for the suspension. McCoy v. WGN Contintental Braodcasting Co., 957 F.2d 368, 373 (7th Cir. 1992).  Although Plaintiff alleges the police officer who issued the citation acted improperly, he provided no evidence to support his assertions.  Compl. ¶ 24.  The record clearly supports the fact that McGinnis honestly believed that the charges against Plaintiff were credible and worthy of suspension.  See Ex. 15; Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1134 (7th Cir. 1994).

To prevail, Plaintiff must provide some evidence that Mr. McGinnis was motivated by discriminatory animus when he made his decision.  Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994).   Further, the record shows that Plaintiff was suspended after an investigation showed that he had violated an ATF Order by providing false information to a law enforcement officer and failing to report the matter to Mr. Ford or any other official in his supervisory chain of command. See e.g., Taylor v. Wash. Metro. Area Transit Auth., 922 F. Supp. 665, 673 (D.D.C.1996) (defendant produced legitimate non-discriminatory explanation for adverse personnel action where it found plaintiff to have committed a serious violation of its "rules of conduct"); Slade v. Billington, 700 F. Supp. 1134 (D.D.C.1988) (Library of Congress provided a legitimate, non-discriminatory reason for the issuance of proposed adverse action against employee where he had violated clearly defined personnel policy).

### C.   Defendant Did Not Discriminate or Retaliate Against Plaintiff by Extending the PIP and Restricting his Duties

The Agency did not discriminate or retaliate against Plaintiff by extending Plaintiff's PIP. Both Mr. Ford and Mr. McGinnis explained that Plaintiff's PIP was extended to assist Plaintiff and to provide him with sufficient time to successfully complete the PIP.  Ex. 20 at 9; Ex. 16 at 10.  By a memorandum dated September 22, 2003, Mr. Ford advised Plaintiff that he was extending the PIP until October 17, 2003. Id.  The extension was made to compensate for 17 days of missed work by Plaintiff's 12 sick days and five days of suspension. Id.  The extension was not adverse to Plaintiff because it provided him an additional 20 days in which Plaintiff could use to successfully complete the PIP. Ex. 17 at 1; Ex. 20 at 9.

As discussed above, at the onset of the PIP, Plaintiff was relieved of his duties providing support to the Baltimore Field Division so that he could devote all of his time to successfully

25

completing the PIP.  Ex. 12 at 96:17.  It is apparent that the extension of the PIP and the reduction in duties were intended not to punish Plaintiff, but rather to increase the likelihood that he would successfully complete the PIP.

As discussed earlier, Mr. Ford documented Plaintiff's performance problems and it was Mr. Ford's opinion that Plaintiff should be solely concentrating on completing the PIP. Ex. 12 at 96:17.  The record is replete with documentation of Plaintiff's deficiencies and Mr. Ford's honest belief that Plaintiff needed to concentrate his efforts on successfully completing the PIP before resuming his full duties.  The record shows that Ford believed that Plaintiff's performance would suffer if he were not relieved of some of his duties.  See Ex. 12. Moreover, the record establishes that once Mr. Ford determined that Plaintiff was not going to successfully complete the PIP, it was proper to place Plaintiff on restrictive duty until the situation could be resolved.  Id. Defendant's reasons for extending Plaintiff's PIP and restricting his duties had nothing whatsoever to do with Plaintiff's protected status, and everything to do with unacceptable performance, and therefore, were legitimate and nondiscriminatory.

D.    Defendant Did Not Discriminate or Retaliate Against Plaintiff by Finding that Plaintiff did Not Successfully Complete the PIP and Proposing his Removal

Defendant did not discriminate or retaliate against Plaintiff by finding that Plaintiff had not successfully completed the PIP and ultimately proposing his removal.  Plaintiff was placed on the PIP on June 20, 2003.  By August 15, 2003, 60 days into the PIP, Ford found that Plaintiff had not successfully performed many of the items required for successful performance on the PIP.  By memorandum dated August 15, 2003, Mr. Ford specifically outlined the items Plaintiff needed to complete in the remaining 30 days to successfully complete the PIP. Ex. 21 at 20.  By

a memorandum dated September 22, 2003, Mr. Ford advised Plaintiff that he was extending the PIP until October 17, 2003. See Ex. 21.

On December 10, 2003, after determining that Plaintiff had failed to successfully complete the PIP, Ford proposed to remove Plaintiff from his position. See Ex. 18. Defendant had legitimate, non-discriminatory reasons for proposing Plaintiff's removal. In Plaintiff's notice of proposed removal, Mr. Ford stated that while Plaintiff had 90 days to improve his performance, he never raised his performance above the below expectations level in any of four of the critical elements detailed in his PIP. Ex. 18 at 86. The reasons Mr. Ford concluded Plaintiff did not successfully complete his PIP are set forth with great particularity in the Proposed Removal. See Ex. 18.

Numerous examples were cited with regard to Plaintiff's lack of Technical Expertise. For example, Plaintiff experienced difficulty measuring sensitivity of the radios and he measured secure deviation with the radio (XTS-3000) in a clear mode of operation and without the encryption key loaded into the unit. Ex. 18 at 89; Ex. 12 at 301:1. When questioned about the sensitivity measurement, Plaintiff could not explain why the test was done and could not perform bit error testing. Ex. 12 at 301:21, 302:19. Plaintiff did not know why a sensitivity measurement was done, he did not know why it was done in clear, or why it should have been done in encrypted mode. Ex. 12 at 302:4-302:6. Plaintiff did not know the difference nor could he explain the difference between the receiver sensitivity and deviation in analog and digital. Ex. 12 at 302:7-302:10. Additionally, Plaintiff was unable to answer questions Mr. Ford posed to him about the operating parameters of the radio. Ex. 12 at 302:12. Mr. Ford asked Plaintiff to research the answers and brief Ford, but Plaintiff never followed up with these answers. Id.

Moreover, during testing of a Quantar repeater, Plaintiff transmitted 140 watts of power into the Motorola service monitor and was unaware of its 125 watt limitation. Ex. 12 at 336:13-336:20. After Mr. Ford pointed this out, Plaintiff again transmitted 140 watts. Ex. 18 at 89. Mr. Ford stated that Plaintiff's actions could have damaged this $20,000 piece of equipment. Id; Ex. 12 at 338:12.

With regard to the Critical Element of Leadership, Mr. Ford conveyed to Plaintiff that to raise his performance level for this element Plaintiff needed to explain to Mr. Ford how Plaintiff intended to balance his workload, propose methods to ensure he completed his tasks, identify issues in his projects and describe methods to resolve them, and provide detailed written reports on certain products. Ex. 18 at 92. During their weekly meetings, Plaintiff was unable to recall what he had accomplished the previous week, could not account for all of his time, never acknowledged that he was lacking any technical skills to perform the assigned duties of his job, did not appear to have ever planned his weekly activities, did not look ahead to identify how he was going to accomplish his assignments, and failed to seek assistance in these areas. Id. He only turned in two reports of the four necessary, and the two he turned in were not complete. Ex. 18 at 92-93.

Plaintiff also remained at the "below expectations" level for Conduct and Cooperation. Ex. 18 at 92-93. During the PIP period, Plaintiff was expected to complete all assigned tasks in a timely manner, provide an explanation if he was unable to complete an assigned task, and assist another senior field specialist during a maintenance trip for digital conversion of an analog system. Ex. 18 at 94. Plaintiff failed to complete all of his assigned tasks and never explained why. During the PIP period, Plaintiff did not volunteer his assistance to fellow co-workers,

managers, or his branch chief when equipment was being shipped, received and processed. On several occasions, he was observed standing and watching while his fellow workers and managers participated in a team effort to complete a task. Plaintiff only assisted after he was instructed to do so and even then his efforts were minimal. Id.

Finally, as to the Critical Element of Oral and Written Communications, during the PIP period, Plaintiff was required to complete written reports on each of his maintenance trips in a timely manner, attend scheduled meetings with various vendors, and prepare a briefing on the technical differences between the XTS-3000 portable radio and the XTS-5000 portable radio and describe the effects those differences will have on ATF's existing code-plugs to the Radio Communications Branch managers. Ex. 18 at 95. Plaintiff only submitted the required written reports after being constantly reminded to do so. While Plaintiff did submit a well-written report on the Baltimore communications support he provided during an operation, the report was submitted so late that the mangers were unable to include the results in their weekly activity report. Id. Plaintiff was asked to provide a detailed plan for his approach to complete the PIP, but his report did not contain specifics and he only listed equipment and the order in which he wanted to work on them. Ex. 18 at 95-96.

Based on Plaintiff's continued performance at a level that failed to Achieve Expectations, Mr. Ford proposed his removal from the Federal service. Plaintiff has not and cannot show that Defendant discriminated or retaliated against him by finding that he failed the PIP and proposing his removal. Therefore, judgment in favor of Defendant is warranted on this claim.

## VI.    Plaintiff's Resignation Did Not Constitute a Constructive Discharge

Plaintiff alleges that he was constructively discharged from his position with the Agency when he resigned in April 2004, after being notified that he was being removed for poor performance. Compl. ¶ 28, 30, 31.  Generally, resignations are presumed to be voluntary. See, e.g., Kim v. United States, 47 Fed. Cl. 493, 497 (2000). "The presumption of voluntariness, however, can be rebutted [1] by demonstrating that the government caused the plaintiff to resign under threat of duress or by other coercion, [2] by demonstrating that the government intentionally misrepresented information relied on to the plaintiff's detriment, or [3] by showing that the plaintiff tried to withdraw his resignation before its effective date. . . ." Veitch v. England, 2005 U.S. Dist. LEXIS 6257 at 27 (D.D.C. Apr. 4, 2005), citing McIntyre v. United States, 30 Fed. Cl. 207, 211 (1993).

As stated above, the record fails to establish that Plaintiff was subjected to discriminatory conduct by Agency management officials because of race, national origin, religion, or reprisal. Moreover, a resignation is not involuntary simply because an employee is faced with the unpleasant alternative of resignation or termination. Keyes v. District of Columbia, 372 F.3d 434 (D.C. Cir. 2004). A plaintiff who advances a claim of constructive discharge must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." Pa. State Police v. Suders, 542 U.S. 129 (2004). "Not only must plaintiff demonstrate that there was intentional discrimination, but plaintiff must also establish the presence of aggravating factors.'" Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 19 (D.D.C. 1998), quoting Dashnaw v. Pena, 12 F.3d 1112, 1115 (D.C. Cir. 1994).  The record demonstrates that ATF management officials decided to terminate plaintiff's employment only after he failed to

successfully complete his PIP. <u>See</u> Ex. 19 at 64-69, 86.  As noted above, Plaintiff has failed to establish discrimination with regard to any of management's actions towards him.  Thus, his claim of constructive discharge must fail.

**VII.    Conclusion**

      For all the foregoing reasons, the Agency is entitled to judgment as a matter of law and Plaintiff's complaint should be dismissed in its entirety with prejudice.

Dated: June 30, 2008

                                  Respectfully submitted,


                                  _/s/_____
                                  JEFFREY A. TAYLOR, D.C. Bar #498610
                                  United States Attorney

                                  _/s/_____
                                  RUDOLPH CONTRERAS, D.C. BAR #434122
                                  Assistant United States Attorney


                                  _/s/_____
                                  MEGAN M. WEIS
                                  Special Assistant U.S. Attorney
                                  United States Attorney's Office
                                  Civil Division
                                  555 4th Street, NW
                                  Washington, D.C. 20530


                                  *Attorneys for Defendant*