# EXHIBIT 7

**Final Department of Justice Decision, dated August 16, 005**



**U.S. Department of Justice**

Complaint Adjudication Office

Agency Complaint Nos. E-03-0001 & E-04-0044
DJ Number 187-9-29

---

*Complaint Adjudication Office*
*Patrick Henry building, Ste. 5300*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

AUG 16 2005

Mr. Zafar Khan
3101 Nestlewood Drive
Oak Hill, VA 20171

Dear Mr. Khan:

This is in reference to your complaint of discrimination that you filed against the Bureau of Alcohol, Tobacco, Firearms & Explosives. Under Department equal employment opportunity regulations, the Department of Justice renders the final decision on your complaint. The Department of Justice finds that you were not subjected to discrimination based on either race, national origin, religion, age or reprisal. Enclosed is the final Department of Justice decision on your complaint.

### Rights of Appeal

You have certain rights of appeal from this decision. First, you have the right to appeal this decision to the Merit Systems Protection Board, Northeastern Regional Office, U.S. Customhouse, Room 501, Second & Chestnut Streets, Philadelphia, PA 19106-2987. Such an appeal must be filed within thirty (30) days of the date you receive this notification. Second, you have the right to file a complaint in the appropriate United States District Court within thirty (30) days of the date you receive this notification.

If you decide to file a civil action and do not have or are unable to obtain the services of an attorney to act on your behalf, you may request the court, in its discretion, to appoint an attorney to represent you. The court may also permit you to file the civil action without payment of fees, costs, or security. If you want to request appointment of an attorney, your request must be filed with the court within thirty days of the date you receive this decision.

Sincerely,

Mark L. Gross
Complaint Adjudication Officer

U.S. Department of Justice

Complaint Adjudication Office

Agency Complaint Nos. E-03-0001 & E-04-0044
DJ Number 187-9-29

*Complaint Adjudication Office*
*Patrick Henry Building, Ste. 5300*
*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530*

AUG 16 2005

DEPARTMENT OF JUSTICE FINAL DECISION

in the matter of

<u>Zafar Khan v. Bureau of Alcohol, Tobacco, Firearms & Explosives</u>

On September 17, 2003, complainant Zafar Khan filed an employment discrimination complaint against the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, Section 15 of the Age Discrimination in Employment Act, 29 U.S.C. §633(a), and 29 C.F.R. §§1614.101(a)&(b). Complainant claimed that he was discriminated against based on race (Asian), age (55), national origin (Pakistani), religion (Islamic) and reprisal when he: 1) was placed on a Performance Improvement Plan (PIP) and had his PIP extended for twenty days; 2) received a seven-day suspension; 3) was relieved of his responsibilities as a Telecommunications Specialist; and 4) had his use of a government vehicle suspended.

Complainant filed a second complaint of discrimination on June 26, 2004. In this complaint, he claimed that he was discriminated against based on race, national origin, religion and reprisal when he was forced to resign from his position on April 9, 2004. After the completion of the EEO investigation into his second complaint, complainant requested that his two complaints be consolidated for processing. On April 28, 2005, an EEOC Administrative Judge granted complainant's request and remanded the consolidated cases to the Department of Justice for processing.

Facts

At the time of his complaints, complainant was a Telecommunications Specialist providing technical support and assistance in Land Mobile Radios (LMR) to the ATF's Baltimore Field Division and affiliated offices. Telecommunications

-2-

Manager Sam Ford (white, age 53) became complainant's first-line supervisor in 2001. Complainant stated that he first contacted ATF's EEO Office in March 2002, claiming that he was being treated less favorably than his co-workers in the Radio Communications Branch (RCB) with regard to certification requirements, training, work assignments and promotions (E-03-0001, Ex. F2, p. 5). Complainant said Ford was contacted by an EEO Counselor at that time.

I.  Complaint Number E-03-0001

   A.  Complainant's allegations

Complainant claimed that he was treated less favorably by his supervisors, Telecommunications Manager James Bowks and Radio Communications Branch Chief Brad Caldwell, beginning in 1999 (Ex. F2, p. 5). He said that, because of his race and religion, he was denied promotions in 1999 and 2000, had his new employee training delayed in 1999, and had arbitrary job requirements imposed upon him (Ex. A1, p. 3). He also claimed that, after the 9/11 terrorist attacks, Bowks made several derogatory statements about Muslims and questioned their loyalty to the United States (id. at 5). Complainant added that, beginning in 2002, Sam Ford assigned him tasks that were incompatible with his position description, failed to provide him with training, and failed to conduct office visits to learn about telecommunications projects he had completed (Ex. F2, p. 8). Complainant claimed that Ford failed to take any of his accomplishments into consideration while his colleagues were given full credit for similar activities (ibid.). He said he experienced "increased harassment, demeaning treatment and a hostile work environment" (id. at 22).

Complainant said that, in March 2003, Ford informed him that his mid-year rating was unsatisfactory and that he was unable to perform the basic functions of his job (id. at 14). Complainant said that Ford placed him on a PIP in June 2003, even though complainant was "functioning at full potential of [his] position" (ibid.). Complainant claimed that he had more responsibilities than many of his co-workers, and that he had extensive education in mathematics and physics (id. at 15). He added that his performance evaluations prior to 2003 had been satisfactory (ibid.). Complainant said that when he met with Ford to discuss his performance during the PIP period, Ford provided negative feedback and vague and confusing instructions (id. at 16). He said Ford never saw any of his work and just assumed that his work was unsatisfactory (id. at 16).

-3-

Complainant further stated that Ford unilaterally extended complainant's PIP for twenty days to make up for days complainant missed due to illness and suspension (id. at 22). Complainant stated that Ford relieved him of his LMR duties during the extension period and transferred those duties to another Telecommunications Specialist (id. at 23). Complainant said Ford told him on October 1, 2003, that his performance in all critical areas was still unsatisfactory (ibid.). He added that Ford never discussed the outcome of the PIP with him until December 10, 2003, when he issued complainant a letter of proposed termination from the ATF (ibid.).

Complainant said he was also discriminated against when he was suspended for seven days from September 15-22, 2003, based on a traffic citation he received while traveling in his government vehicle (GOV). Complainant explained that he received a traffic citation in June 2002 for driving in a HOV lane (id. at 11). He said the ticket was improperly written and the police officer who gave him the ticket lied in court when complainant appealed the citation (ibid.). The record indicates that complainant notified Ford of his ticket on October 28, 2002 (Ex. F14, p. 14). Complainant said that Ford asked him to write a narrative regarding the ticket in March 2003, so that it could be forwarded to the Office of Internal Affairs (id. at 12). Complainant said he was not aware that he had to report a minor traffic citation to his supervisor (ibid.). Complainant said he and his union representative met with the Chief of the Technical Operations Branch Timothy McGinnis and argued that a letter of reprimand would be sufficient punishment (id. at 13). He said that McGinnis failed to take into consideration the mitigating circumstances and suspended him for seven days without pay (ibid.).

Finally, complainant claimed that Ford took away all of his responsibilities and placed him on administrative duty on December 1, 2003 (id. at 18). Complainant said he was prohibited from doing any radio communications work and had to surrender his GOV, his credentials, his cellular phone, and all equipment and tools (ibid.). He said Ford also put him on an 8:00-4:30 work schedule performing menial office tasks which took away his opportunity to earn overtime (ibid.). He alleged that Ford prevented him from preparing a response to the allegations regarding his poor performance by blocking his remote access to e-mail and prohibiting him from taking home a government-issued computer (ibid.).

-4-

B.  Management's response

Sam Ford explained that complainant was placed on a PIP in June 2003 because of his unsatisfactory performance (Ex. F4, p. 5). Ford said he did not want to give complainant an "Unsatisfactory" rating during the first year he supervised him so he took a lot of notes and watched complainant closely for improvements (E-04-0044, Ex. B, p. 7). Ford stated that complainant "was not demonstrating he possessed the technical skills for satisfactorily meeting the requirements of his assigned duties and was refusing to participate in supervisory counseling to determine why he was not performing well" (E-03-0001, Ex. 4, p. 5). Ford said that complainant was performing at an unsatisfactory level on four of his critical elements at his mid-year review in March 2003 (id. at 6). He added that he outlined specific tasks and assignments designed around those critical elements for complainant to perform during the PIP period (ibid.). Ford further stated that complainant's PIP was extended to allow him ample time to complete it and to compensate for 17 days complainant lost during his PIP period due to sick leave and suspension (id. at 9). Ford claimed that he issued the extension to help complainant, but that complainant still failed to successfully address all of the items in the PIP (ibid.).

Ford responded that complainant was suspended for seven days because of his HOV violation and the results of an investigation into the matter by the Office of Inspection (OIE)(id. at 4). Ford said he notified Timothy McGinnis that complainant's original story as to why he was driving in the HOV lane was different from the story complainant told McGinnis (id. at 5). Ford noted that the OIE recommended the suspension.

Ford stated that complainant was relieved of his Telecommunications Specialist duties so that he could devote 100% of his time to successfully completing the PIP in the allotted time period (id. at 7). He said the duties were never restored because complainant failed to successfully complete the PIP (ibid.). Ford continued that complainant's home-to-work GOV privileges were suspended in September 2003 because he was no longer providing field support from home after his Telecommunications Specialist duties were suspended (id. at 8). Ford added that complainant was not asked to surrender the GOV until December 2, 2003, when he was placed on restricted duty status (ibid.).

-5-

Timothy McGinnis stated that complainant was suspended for seven days for the misuse of a GOV and for providing false information to a law enforcement officer (Ex. F3, p. 5). He said that the Professional Review Board recommended a suspension of seven days based on the results of an OIE investigation (ibid.). McGinnis said he concurred with Ford's decision to suspend complainant's home-to-work GOV privileges in September 2003, since complainant was no longer responsible for providing direct support to a Field Division (id. at 9). McGinnis added that complainant's PIP was extended as a professional courtesy in order to provide him the maximum amount of time possible to complete the PIP, and to compensate for the days of work complainant missed during his original PIP period (id. at 10).

C.  Statements of co-workers

Telecommunications Specialist Rafael Puente said that complainant assisted him in the digital conversion of the Houston Division (Ex. F18, p. 5). Puente said that complainant was "helpful in some areas of the over-all task," but added that he found complainant to be "slightly disorganized and easily distracted" (id. at 6).

Special Agent Steven Taylor oversees radio communications for the BFD and said he was complainant's primary contact within the BFD (Ex. F20, p. 6). Taylor said that while complainant seemed to be very knowledgeable in the area of radio communications, complainant was "unfamiliar with radio communications and operating within a 'Law Enforcement' environment" (ibid.). He said complainant was not an effective communicator, noting that he (Taylor) received several complaints from agents who had requested complainant's assistance with radio repair issues and had not received help in a timely manner (ibid.). Taylor described complainant's work performance as "below average" (ibid.).

Field Supervisor Joseph Anarumo said that complainant performed the Hyattsville, Maryland, office's digital conversion and his work was "complete and satisfactory" (Ex. F19, p. 5). Special Agent David DiBetta of the Wilmington office said that complainant "has always been helpful to me in all of my radio needs" (Ex. F23, p. 5). Brian Glynn, a Resident Agent in Charge in the BFD's Office of Field Operations, said that, from a non-technical perspective, he has found complainant to be "thorough, focused and hardworking" in his support of Glynn's office (Ex. F24, p. 6).

-6-

D. <u>Documentary evidence</u>

On June 20, 2003, Ford issued complainant a detailed PIP memorandum in which Ford informed complainant that he was not meeting the minimum requirements of his Telecommunications Specialist position. Ford gave complainant 90 days to raise his performance in four of his critical elements above the "below expectations" level (Ex. F12). Ford went on to state (<u>id</u>. at 3):

> A review of your work indicates that you generally complete tasks that require little or no technical skills. However, when you have to complete tasks that require the use of test equipment, troubleshooting techniques and technical skills, you often fail to complete your assignments or require assistance from other technicians.

Ford provided a detailed account of the areas in which complainant's performance was deficient under each critical element of the job description, and listed specific recommendations and expectations. Ford also wrote (<u>id</u>. at 11):

> You have demonstrated in the past that you know how to do the work; however, your current performance indicates you have not retained the knowledge levels required to continue to produce the amount and quality of work expected of a PD-II Telecommunications Specialist, as described in this memorandum, your position description, and your critical elements and standards.

On September 22, 2003, Ford sent a memorandum to complainant offering to extend the PIP for an additional 20 days to compensate for the 17 days complainant missed due to sick leave and suspension time (Ex. F13, p. 1). On October 6, 2003, Ford informed complainant of the areas in which complainant's performance was still deficient (<u>id</u>., p. 2). In that memorandum, Ford stated that complainant had been relieved of his division responsibilities and headquarters assignments during the last month of his PIP to allow him "to devote [his] time and efforts toward completing all items on the PIP" (<u>id</u>. at 3).

-7-

II. Complaint Number E-04-0044

    A. Complainant's allegations

Complainant claimed that he was forced to resign in April 2004, "based upon unsubstantiated allegations of poor performance in a PIP" (E-04-0044, Ex. A, p. 2). He alleged that ATF Radio Branch management officials were biased against him because of his prior EEO activity (ibid.). Complainant claimed that he was presented with a "Decision to Remove for Unsatisfactory Performance" on April 8, 2004. He stated that because of this letter, he was "unlawfully forced by ATF to resign under duress on April 9, 2004" (Ex. F2, p. 27). Complainant added that Ford's statements regarding his performance were "false, misleading and unfair" (id. at 28). He said that ATF's failure to accept his responses to the initial proposal of termination issued in December 2003 and his responses to the job evaluation discussions that took place in January 2004, represented discriminatory and retaliatory actions (ibid.).

Complainant specifically stated that Ford's statement that complainant lacked proficiency in technical areas was false (id. at 29). He claimed he successfully demonstrated his technical competence prior to Ford's arrival as his supervisor. He also challenged Ford's accusation that he required a lot of supervisory intervention, noting that supervisory intervention was not necessary prior to Ford's arrival (ibid.). Complainant stated that "[t]he only constant theme in each of [Ford's] assertions is the strongly subjective nature of all of these false allegations" (id. at 31). He said that all of Ford's and McGinnis' allegations regarding his performance are "factually false, or attributable to the ongoing and prejudicial efforts of Mr. Ford and Mr. McGinnis to unlawfully eliminate me from continuing employment with ATF" (ibid.).

    B. Management's response

Ford denied complainant's allegations and pointed out that the proposal of termination dated December 10, 2003, discussed complainant's performance in each critical element and "stated in detail examples of technical mistakes and errors he made while demonstrating his skills and abilities" (Ex. F4, p. 5). He added that complainant was only issued a letter of termination after complainant was given an opportunity to respond to the proposal and after McGinnis completed his investigation into the matter (ibid.). Ford said that no other employees under his supervision

-8-

had a performance record similar to complainant's (ibid.). He added that every effort was made to assist complainant in completing his PIP (id. at 6). Ford explained that complainant's termination was not recommended until he was unable to demonstrate that he possessed the skills necessary to successfully complete the PIP (ibid.).

McGinnis said he determined that complainant should be removed from ATF based on his unsuccessful performance (Ex. F3, p. 3). McGinnis said complainant chose to resign rather than be removed (ibid.).

C. Documentary evidence

On October 24, 2003, Radio Communications Branch Chief Brad Caldwell, complainant's second-line supervisor, provided a memorandum discussing a briefing complainant provided on the differences between two portable radios (Ex. F8, p. 120). Caldwell noted that complainant was unable to provide detailed technical information regarding the impact various features of the radios would have on the office's radio system, or what the actual functions of those features were (ibid.).

On March 12, 2003, Senior Telecommunications Specialist Jeffrey Hueston provided a memorandum regarding his observation of complainant's performance during the installation of a new repeater site in Salisbury (id. at 121). Hueston stated that, despite complainant's years of experience, he "struggles to be proficient with some of our most repetitive tasks" (ibid.).

Analysis

Complainant claimed that his supervisors in the ATF's Baltimore Field Division discriminated against him based on race, age, national origin, religion and reprisal when they subjected him to a series of adverse employment actions beginning in June 2003 that ultimately led to his forced resignation. Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3 & §2000e-16, and 29 C.F.R. §§1614.101(a)&(b), prohibit federal employers from discriminating against employees on the basis of race, national origin and religion, and from retaliating against employees who engage in EEO activity. In addition, Section 15 of the Age Discrimination in Employment Act (ADEA) prohibits federal employers from discriminating against individuals 40 years old or over on the basis of age. 29 U.S.C. §633a. In order to find intentional discrimination or

-9-

retaliation under Title VII, the preponderance of the evidence must show that management's proffered non-discriminatory reason(s) for its actions are not credible, and that management was actually motivated by the employee's protected traits -- in this instance, race, national origin, age, religion, and/or prior EEO activity. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519-525 (1993). Based on a thorough review of the record, there is no basis for a finding that ATF management officials discriminated against complainant, or retaliated against him for engaging in EEO activity.

I. Placement on PIP in June 2003

Complainant claimed that Sam Ford subjected him to discrimination and retaliation in June 2003 when Ford placed him on a PIP even though he was performing his job satisfactorily. Ford provided a legitimate, non-discriminatory reason for placing complainant on a PIP. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). Ford stated that complainant was placed on a PIP because he was performing at an unsatisfactory level on four of the critical elements of his position at his March 2003 mid-year review (E-03-0001., Ex. 4, p. 6). Because Ford provided a non-discriminatory reason for placing complainant on a PIP, for complainant to prevail on his claim the record must demonstrate that those stated reasons were a pretext for discrimination and/or retaliation. See Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir. 1998).

In an effort to establish that he was placed on a PIP for discriminatory reasons, complainant pointed out that his evaluations prior to March 2003 had all been satisfactory (Ex. F2, p. 15). However, the fact that complainant may have been meeting his supervisors' expectations in the past is irrelevant and he must show that he was meeting those expectations at the time Ford placed him on the PIP. See Luckie v. Ameritech Corp., 389 F.3d 708, 715 (November 19, 2004). The record demonstrates that complainant was not meeting his supervisors' expectations at the time he was placed on the PIP and Ford provided detailed documentation of the problems complainant was experiencing in the memorandum titled "Opportunity Period to Improve Performance" (Ex. F12, p. 2). Ford noted that complainant required "close supervision and repetitive technical assistance for tasks performed on each of [complainant's] projects" (ibid.). He also provided a detailed narrative of complainant's present performance under each of the critical elements on which complainant was rated. Comments by some of complainant's co-workers in the BFD support Ford's observations regarding

-10-

complainant's performance. SA Steven Taylor said complainant had trouble communicating and described complainant's performance as "below average" (Ex. F20, p. 6). Finally, Jeffrey Hueston added that, despite complainant's ATF experience, he struggled with some of the basic tasks of a Telecommunications Specialist (Ex. F8, p. 12). Thus, Ford was not alone in his opinions about complainant's poor performance.

Despite complainant's allegations that he was treated differently after the 9/11 terrorist attacks, there is no evidence in the record that either Ford or any other BFD management official treated complainant less favorably because of his race, national origin or religion. Significantly, complainant cited numerous instances in which he believed he was discriminated against based on his Islamic faith prior to 9/11. Specifically, complainant claimed he was denied promotions and training, and was subjected to arbitrary job-related decisions between 1999 and 2001. In addition, while complainant claimed that his prior supervisor, Telecommunications Manager James Bowks made derogatory remarks against Muslims after 9/11, there is no evidence that complainant ever complained about such comments prior to filing this complaint nearly two years later. Moreover, there is no evidence that Ford, the responsible management official with regard to the employment actions at question here, ever made such comments. Complainant's conclusory opinions that the alleged adverse actions in this case were discriminatory, without specific evidence that BFD management officials acted because of complainant's race, national origin or religion, are insufficient to establish pretext. See Huckaby v. Moore, 137 F.3d 871, 878 (5th Cir. 1998). There is also no evidence that complainant was placed on a PIP because of his age. While not dispositive, the fact that Ford was only two years younger than complainant undermines complainant's claim that Ford was motivated by discriminatory animus based on age.

Complainant's primary claim appears to be that Ford's actions, including placing complainant on a PIP, were based on complainant's prior EEO activity. To establish a claim of retaliation under Title VII, the record must demonstrate that: (1) complainant engaged in protected activity under Title VII and management was aware of such activity; (2) complainant suffered an adverse employment action subsequent to engaging in the protected activity; and (3) a causal connection exists between complainant's participation in the protected activity and the adverse employment action. Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2nd Cir. 1998). As discussed above, Ford provided a detailed record of complainant's

-11-

performance deficiencies which led to his being placed on the PIP. While complainant stated that Ford's opinions regarding his performance were wrong, it is the rating official's opinion of complainant's performance that is relevant, not complainant's subjective evaluation of his own performance. Shorter v. ICG Holdings, Inc., 188 F.3d 1204 (10th 1999). More importantly, the record demonstrates that Ford issued complainant an overall satisfactory rating for the rating period October 2001 to September 2002, after he became aware of complainant's initial EEO activity in February 2002 (Ex. F10, p. 1). Again, while not dispositive, the fact that Ford gave complainant a favorable review in December 2002 certainly weakens complainant's claim that Ford harbored retaliatory animus when he placed complainant on a PIP in June 2003, nearly sixteen months after he became aware of complainant's EEO contact. In addition, Ford noted in the PIP memorandum that complainant's past performance had been satisfactory and that it was his current performance that was lacking (Ex. F4, p. 11). Thus, because the preponderance of the evidence in the record demonstrates that complainant was not performing up to his supervisors' expectations in 2003, his claim that his placement on a PIP was discriminatory and/or retaliatory cannot be sustained.

II. <u>Suspension for GOV incident</u>

Complainant also claimed that he was subjected to discrimination and/or retaliation when he was suspended for seven days in September 2003 after receiving a traffic citation while driving his GOV. Complainant claimed that he was unaware he had to report such a minor violation to his supervisor and added that the police officer who issued the ticket lied in court during complainant's appeal of the citation (Ex. F2, p. 11). Timothy McGinnis said he decided to suspend complainant for seven days based on a review board recommendation after an OIE investigation into the incident (Ex. F3, p. 5). McGinnis said he issued the suspension because complainant provided false information to a law enforcement officer and failed to immediately report the incident to a supervisor (Ex. F11, p. 2). In determining whether pretext exists, the issue is not whether McGinnis made the correct decision in suspending complainant, but whether he honestly believed in the reasons he offered for the suspension. McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). A strong theme running throughout complainant's claim is that the police officer who issued the citation acted improperly. However, such a claim does not address whether McGinnis honestly believed that the charges against complainant were credible and worthy of suspension. Lenoir v. Roll Coater,

-12-

Inc., 13 F.3d 1130, 1134 (7th Cir. 1994). Complainant cannot simply assert that the decision to suspend him was wrong or inappropriate, but must provide evidence that McGinnis was motivated by discriminatory or retaliatory animus when he made his decision. Fuentes v. Perskie, 32 F.3d 759, 765 (3rd Cir. 1994). The record in this case establishes that complainant was suspended after an OIE investigation determined that he had provided false information to a law enforcement officer and had failed to report the matter to Ford or any other official in his supervisory chain of command. There is no evidence that McGinnis' explanation for suspending complainant is unworthy of credence, or that he was motivated by discriminatory or retaliatory animus.

III. Extension of PIP and removal from official duties

The preponderance of the evidence in the record also fails to establish that complainant was discriminated against based on race, national origin, religion, age or reprisal when his PIP was extended in September 2003, or when he was relieved of his Telecommunications Specialist duties and had his GOV and other job-related privileges taken away. Complainant claimed that he had been performing at an "exceptional" level and he did not understand why Ford took away his duties (Ex. F2, p. 19). He said he did not know of any co-workers who had their GOVs taken away. Both Ford and McGinnis explained that complainant's PIP was extended to assist complainant and to provide him with sufficient time to successfully complete the PIP. Ford also explained that the PIP was extended because complainant missed seventeen days during the original PIP period due to sickness and suspension (Ex. 4, p. 9). Ford further explained that complainant was relieved of his duties so that he could devote 100% of his time to completing the PIP in the designated time period. Management officials explained that complainant's home-to-work GOV privileges were suspended in September 2003 because he was no longer providing field support to a field division, and that he was asked to surrender his GOV, credentials, equipment, etc. in December 2003 when he was placed on restricted duty status (Ex. F4, p. 8).

As discussed above, complainant's performance problems were well-documented by Ford and the record demonstrates that it was Ford's opinion that complainant should be concentrating only on completing the PIP in September 2003. It is true that Ford's actions followed closely on the heels of complainant's filing of his official EEO complaint in this matter on September 17, 2003. However, such a mere coincidence of timing does not equate to

-13-

intentional retaliation. See Ghane v. West, 148 F.3d 979, 983 (8th Cir. 1998). Ford provided ample evidence of complainant's performance deficiencies and the record indicates that he honestly believed complainant needed to concentrate his efforts on successfully completing the issues enumerated in his PIP before he could resume performing his full duties. Once Ford determined that complainant was not going to successfully complete the PIP, the restriction of duties appears to have been an appropriate response until management could determine how to handle the situation. The record fails to establish that Ford acted as he did because of complainant's EEO activity. In fact, instead of placing complainant on restricted duty at the end of the original PIP period in September 2003, Ford extended the PIP and gave complainant an extra month to improve his performance. While complainant may have believed that he was performing at a satisfactory level, it is Ford's perception of his performance that is important and there is no evidence that Ford fabricated his opinions regarding complainant's poor performance because of complainant's prior EEO activity. The record establishes that Ford honestly believed complainant's performance would continue to suffer if he were not relieved of some of his duties and, once he determined that complainant would not successfully complete the PIP, it appears that placing complainant on restricted duty status until the situation could be resolved was a reasonable and appropriate response.

IV. Resignation in April 2004

Complainant claimed that he was subjected to further discrimination and retaliation when he was forced to resign from ATF in April 2004 based on unsubstantiated allegations regarding his poor performance and the outcome of his PIP. A constructive discharge is established in this case if the record demonstrates that: (1) a reasonable person in complainant's situation would have viewed ATF's actions as intolerable and would have felt compelled to resign; (2) ATF's actions were discriminatory and/or retaliatory; and (3) complainant's resignation resulted from ATF's actions. See Newman v. Tennessee Valley Authority, EEOC No. 01941973 (July 19, 1996). As stated above, the record fails to establish that complainant was subjected to discriminatory conduct by ATF management officials because of either race, national, origin, age, religion or reprisal.

Complainant claimed that Ford's allegations regarding his technical proficiency were false and that he had demonstrated his technical competence prior to Ford's arrival as his supervisor (E-04-0044, Ex. F2, p. 29). He also pointed out that supervisory

-14-

intervention was not necessary before Ford arrived. Even if true, this does not establish that complainant was performing at an acceptable level in 2003 when Ford placed him on a PIP and subsequently proposed his termination from employment. Ford explained that he did not give complainant an "Unsatisfactory" rating during his first year as complainant's supervisor because he wanted to take notes and watch for improvements (Ex. B, p. 7). The record demonstrates that ATF management officials decided to terminate complainant's employment only after he failed to successfully complete his PIP over a four-month period. Because there is no evidence that management's actions were discriminatory or retaliatory, complainant's claim that he was constructively discharged fails.

### Decision

For the foregoing reasons, the record fails to establish that complainant was discriminated against based on race, national origin, religion, age or reprisal during 2003 by his supervisors in the Radio Communications Branch. The record also fails to establish that complainant was constructively discharged from his position with ATF in April 2004 because of race, national origin, religion, age or reprisal.

_____
Mark L. Gross
Complaint Adjudication Officer

_____
David B. Berry
Attorney
Complaint Adjudication Office