# EXHIBIT 23

**Affidavit of Steven Scott Taylor**

# AFFIDAVIT

**STATE OF Maryland**

**CITY OF Baltimore**

I, Steven Scott Taylor, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), U.S. Department of Justice (DOJ), make the following statement freely and voluntarily to Daniel Willard Jewell, who has identified himself to me as a Contract EEO Investigator for ATF, investigating a complaint of employment discrimination filed by Zafar Khan, knowing that this statement may be used in evidence. I understand that this statement is not strictly confidential and may be shown to any interested party with a legally recognized need to know.

I hereby solemnly swear or affirm, under penalty of law for perjury:

Q1. (a) Please state your full name, position title, grade and job series. (b) Please also state your race, religion, birthdate, skin color and national origin.

A1. Steven Scott Taylor, Special Agent, 13, 1811.

White, None, July 17, 1965, White, USA.

Q2. (a) What is the name of the office in which you work? (b) What are the names of any other organizational branches, divisions or offices between your office and the Office of the Director for ATF?

A2. ATF Baltimore Field Division; Office of Field Operations

Q3. Who are your first and second level supervisors?

A3. Division Operations Officer Mario Dispenza

Assistant Special Agent in Charge Joseph M. Riehl

Q4. In general, what are your duties? How many individuals do you supervise and what are their positions and grade levels?

A4. I am currently assigned as the Tactical Operations Officer for the ATF Baltimore Field Division. I am responsible for assisting Agents and Inspectors with the use of Investigative Equipment and Electronic Surveillance. I do not supervise any ATF employees.

Q5. (a) How long have you known Zafar A. Khan? (b) Do or did you supervise him and, if so, for what period of time? (c) Please describe the nature of the work he performs or performed in the past with or for you.

A5. Since his assignment as the Communications Specialist for the ATF Baltimore Field Division in the fall of 2001. At no time did I supervise Zafar Khan. Mr. Khan was responsible for the ATF Radio system used within the ATF Baltimore Field Division.

Q6. What do you know, believe or understand Mr. Khan's race, religion, age, skin color and national origin to be?

A6. I have no knowledge as to the race, religion, age or national origin of Mr. Khan. I observed Mr. Khan's skin color to be brown.

Q7. Mr. Khan alleges he was retaliated against for his past EEO activity. When and how did you first learn he complained of employment discrimination or had in some way participated in the EEO complaint process and what do you know of his activity?

A7. I was unaware of any EEO activities by Mr. Khan until I was contacted by Mr. Jewell and asked to complete this affidavit.

Q8. Mr. Khan alleges he was discriminated against because of his race, religion, age, skin color and national origin when he was suspended from his position between September 15 and 22, 2003. He asserts the suspension was based on his receipt of a citation for a minor HOV driving violation and was too severe a penalty for what he did. (a) Why was Mr. Khan suspended? Please explain in detail whatever you know of this matter. (b) Who was involved in the suspension decision? Please explain in detail. (c) What is your response to his claim of discrimination in connection with this matter?

A8. On September 11, 2003, I received an e-mail from Mr. Khan informing me that he had been suspended for a minor HOV violation. This e-mail stated that Tim McGinnis decided to suspend Mr. Khan. I have no knowledge as to the exact cause for which Mr. Khan was suspended, only the information in which Mr. Khan provided to me in the above noted e-mail.

Q9. Mr. Khan also alleges he was discriminated against because of his race, religion, age, skin color and national origin when he was placed on a Performance Improvement Plan (PIP) for 90 days on or about June 20, 2003. (a) Why was Mr. Khan placed on a PIP? Please explain in detail whatever you know of this matter. (b) Who was involved in the decision to place Mr. Khan on a PIP? Please explain in detail. (c) What is your response to his claim of discrimination in connection with this matter?

A9. I have no knowledge to the facts or circumstances as to the placement of Mr. Khan on a "PIP".

Q10. Mr. Khan also alleges he was retaliated against because of his EEO activity when he was relieved of his responsibilities as a Telecommunications Specialist for the Baltimore Field Division on or about September 22, 2003. (a) What duties were taken away from Mr. Khan and why was he relieved of them? Please explain in detail whatever you know of this matter. (b) Who was involved in the decision to remove any of his duties? Please explain in detail. (c) Were any of these removed duties restored to him? Please explain why, what the duties are and when this occurred. (d) What is your response to his claim of discrimination in connection with this matter?

A10. Mr. Khan was a Radio Communications Specialist for the ATF Radio Communications Branch and was assigned the Baltimore Field Division. He was responsible for all of fixed, mobile and portable ATF radios within the Baltimore Field Division. I have no knowledge as to facts of why or who relieved Mr. Khan from his

assignment. As of this date, Mr. Khan has not been restored to his duties. I have no knowledge of any discrimination of Mr. Khan in connection to this matter.

Q11. Mr. Khan also alleges he was retaliated against because of his EEO activity when his use of a government vehicle was suspended on or about September 22, 2003. (a) What kind of vehicle was involved, why did Mr. Khan previously have use of it and why was its use taken away from him? Please explain in detail whatever you know of this matter. (b) Who was involved in the decision to remove his use of a vehicle? Please explain in detail. (c) Was his use of a vehicle restored to him? Please explain why, what the terms of usage were and when this occurred. (d) What is your response to his claim of discrimination in connection with this matter?

A11. I have no knowledge or facts relating to the allegations of Mr. Khan made in question # 11.

Q12. Mr. Khan also alleges he was retaliated against because of his EEO activity when his PIP was extended until about October 17, 2003. (a) Why was his PIP extended, what were the terms of the extension and what activities transpired in relation to and during the period of the extension? Please explain in detail whatever you know of this matter. (b) Who was involved in the decision to extend his PIP? Please explain in detail. (c) What was the outcome of the extension and when did it end? Please explain in detail. (d) What is your response to his claim of discrimination in connection with this matter?

A12.   I have no knowledge or facts relating to the allegations of Mr. Khan made in question # 12.

Q13.   (a) Please describe any work-related contacts you have had with Mr. Khan over the past two years and state your personal impressions as to the quality of his work performance.  (b) If you have an opinion as to the propriety of placing Mr. Khan on a PIP, please state your opinion and explain why you hold such an opinion.

A13.   Since his assignment as the Radio Communications Specialist for the Baltimore Field Division, I was the primary contact to Mr. Khan within the Division. I would request Mr. Khan's assistance with radio communications issues when needed. I would often assist Mr. Khan. in the facilitation of radio repairs or re-programming of radios within the Baltimore Field Division. Mr. Khan seemed to be very knowledgeable in radio communications. However, in my opinion, Mr. Khan was unfamiliar with radio communications and operating within a "Law Enforcement" environment. When given the opportunity to provide training on use of the ATF radio system, Mr. Khan was not an effective communicator. During his assignment to the Baltimore Field Division, I received several complaints from Agents who had requested Mr. Khan's assistance for radio repairs issues and who did not receive the requested assistance in a timely manner. In my opinion, Mr. Khan's work performance was below average.

Q14. Mr. Khan also alleges that he was verbally assaulted by a co-worker when the co-worker used the term "hello boys" in his presence. He further asserts that he complained about the use of this term but his supervisors did nothing about it and even defended the co-worker's use of the term. (a) What is your response to these allegations? (b) Were you present or did you hear of this incident from someone else? Please explain in detail and state what you heard, the circumstances of the incident and what actions you took or what you said.

A14. I have no knowledge or facts relating to the allegations of Mr. Khan made in question # 14.

Q15. (a) In connection with the above allegations by Mr. Khan, do you have any reason to believe anyone discriminated or retaliated against him because of his race, religion, age, skin color, national origin or his EEO activity? (c) If yes, who is that person and why do you believe this?

A15. I have no knowledge of anyone discriminating or retaliating against Mr. Khan.

Q16. (a) Is there anyone you would like to suggest as a witness for the Investigator to interview on the above issues? (b) If yes, please provide the person's name and explain why he or she should be interviewed.

A16. Members of the ATF Radio Communications Branch. Mr. Khan was assigned to the Baltimore Field Division. However, the majorority of Mr. Khan's work was performed at the Radio Communications Branch. Mr. Khan spent very few days actually working on Baltimore Field Division radio issues.

I have read the above statement and declare that it is truthful, accurate and complete to the best of my knowledge, information and belief, under penalty of law for perjury. I understand that the information I have given is not to be considered strictly confidential and may be shown to interested parties pursuant to regulations of the U.S. Equal Employment Opportunity Commission governing the processing of this administrative complaint and located at Title 29, Code of Federal Regulations, Part 1614.

_____
Steven Scott Taylor

APRIL 16, 2004
Date

Subscribed before me at

31 Hopkins Plaza on
(location)

this 16th day of April, 2004.

_____ Notary
Witness to Affiant's Signature

My Commn Expires 4/1/06

Page 8 of 8                                                    Initials SST

F20-8